Case number 19-1392, Jonathan Elges, et al., oral argument not to exceed 15 minutes per side. Good morning, Your Honors. Solomon Radner on behalf of the Plaintiff Appellant on this matter. I'm aware that Your Honors all read the brief and the briefing has been quite extensive in this case. There are a number of issues and a lot of depositions and other evidence that were submitted. I'm not going to summarize my entire brief. There's one point that I want to make, and just one point. And then if there's no questions, I'll take a seat. I'm sorry. I need to begin by saying I've reserved five minutes for rebuttal. I apologize about that. The one point that I want to make is what's at stake today is whether we have an expectation of privacy to our hard drives. This issue has already been decided by the Supreme Court and by many other courts. Cell phones and computers and iPads and iPods contain the privacies of life. There's no question about that. The defendants are still in possession of my client's hard drives. They think that's okay because they made copies of the hard drives. Judge Tarnow threw the case out because there's no explicit case that says they're not allowed to keep copies of a hard drive. Copies of a hard drive and a hard drive are the same thing. That's why they're called clones. And that's what's at stake here today. If the court does not rule in our favor, the police will continue to keep people's hard drives even after... ...the hard drives are returned or the copies returned. I'm not sure I follow that. I agree with you. It's your property. So why can't you sue to get it back? Well, we did that. It's a Fourth Amendment seizure. Is it? Because in this context, you're going after the specific officer versus the custodian of the property. Just walk me through this. You're suing Officer Algis and you're alleging he committed a Fourth Amendment violation both at the beginning and end, for lack of a better way of describing it. And other defendants. Let's just go with him for a second because he's the front and center, I think. But to overcome that, you have to overcome qualified immunity. Whereas if you sue to simply get your property back under Michigan law, it seems to me a much different show. Am I wrong? I don't know if you're wrong or not. I haven't researched that particular Michigan law. What I do know is that the Fourth Amendment protects us from unlawful search and seizure. Go ahead. What seems to me . . . to me, I may be wrong and Judge Lepar can tell me if I'm wrong. But the crux of his question, I think, really goes to the copying of the contents of the devices. And it goes really more to your claim against Officer McCabe than your claim against Officer Algis. And he's asking, I think, if there's a procedure under Michigan law by which you could have sought to retrieve the copies, your devices and the copies. I don't believe there is. The most on point law is the Fourth Amendment. Every search and seizure comes . . . There's a mechanism for getting it back. I think he's asking you about an analogous procedure under state law. Did I get that right? Yeah. Whether there is or isn't, the Fourth Amendment protects us for that also. So then under the Fourth Amendment, right here, they got a warrant on the front end. On the back end, the prosecutor just directed them to make copies. Am I right about that? No. No. There's one person who says, without any substantiation, that a prosecutor told them to make copies. But that's, first of all, that's completely unsubstantiated. But is that relevant? I mean, whether a prosecutor or officer does that. No, I'm just responding to what you said. Because the prosecutor has, in theory, nothing to do with the police. The prosecutor could tell the police to do something all day long, and if it's unconstitutional . . . I thought that what happened is, they dismissed the case without prejudice. They said they were going to continue to investigate, because at the time they initially searched the hard drive on the phone . . . They found images that they thought were underage, amongst other things. And so, at the end, I thought what happened is, the prosecutor said, we're dismissing it without prejudice. We'll decide if we're going to finally dismiss it. And then, this is where the . . . and maybe I'm putting facts together that don't belong together. Copy the hard drives, and we'll make a decision. I'm putting in some words, but I thought that was kind of the gist of the story. Am I wrong? That's the gist of the story, from the police perspective. They claim that the reason they had to do this was to look for additional evidence to . . . Is there any evidence to the contrary? There's no evidence to support that. There is evidence to support that they believed there was images on the phone. You're not disputing that, right? There were images. I haven't seen any images that claim to be underage. Well, they perceived them to be underage. I thought he said they were 19 and 22. But, they thought they were underage. It seems to me, if they thought they were underage, they would have a reason to investigate. Then, they should get a warrant for that purpose. Well, can I just shift gears a little bit? When you elect the route of Section 1983, it does become relevant whether the law is clearly established for qualified immunity purposes. I gather you're much more concerned about this aspect of your claim than you are about how they got to be there in the first place, to your client's apartment in that position. So, you care about your claim against, say, Officer McCabe more than you do your claim about Officer Elgis? Am I reading that right? Completely correct. Well, gee, I would have thought your claim against Elgis was stronger. Well, what you asked me was the most important case. The most important issue here is that after the case was dismissed, after they knew they had the wrong guy, after they knew that the subpoena was based on subpoenaing the wrong person, their arrogance and ego required them to keep it to try to catch him on something else. So, after the judge said, give him his property back, they went and copied it because they wanted to get him on something else. You just want to get rid of the copy. Get the copy back. Exactly. That's what my motion for summary judgment was for. Give us our property back. And, they still have it. Why not? Go ahead. They have a copy. They keep the property back. Kind of like taking somebody's DNA without their permission and saying, well, you can't keep a copy of what the DNA showed. And there was a case that I cited from the United States. I wouldn't concede that if I were you. I think it's more than DNA, right? It's like making a copy of all your files and keeping it. So, it's more than just DNA. It's arguably, as the Supreme Court said in Riley, your entire record. Privacies of life. And there's a case on point that says even a copy of a receipt is considered a seizure. I may have missed this. Can I ask one more question? I agree with Judge Gibbons. I would have thought the initial, so I misperceived it as well. But, why not sue under the due process clause? Perhaps we should have. But at the time, it didn't seem that that was the appropriate way to go. This seemed to be more of a Fourth Amendment issue. Do you understand what she's saying on the back end about clearly established? You can't point us to a case, basically, that says, I mean, I think, it sounds to me like you might have a due process winner. I don't know. I'd have to think it through. But what I'm struggling with is what Fourth Amendment case says you can't do this if they have probable cause. It's in their possession. So there's no seizure because they already have it. Pray v. City of Sandusky. Pardon me? Pray v. City of Sandusky. It says specifically this? I thought that was more general. Go ahead. It's more general, but what it tells you is once you know you're in the wrong place, once you know you made a mistake, you've got to back off. Now, if you think you got something else, based on that supposed good faith mistake, you could get a new warrant and say, you know what? This has nothing to do with extorting a little girl, but we think we found some child pornography here, which in my opinion is utter nonsense. It's nothing more than we've got to get him on something because otherwise our egos are going to be hurt and we're going to have to admit we got the wrong guy. Let me just make sure I understand and make sure you understand the implications of this. You're telling us that you concede that the mistakes made by Officer Elgis were good faith errors of judgment? No. Oh, no, no, no, no. Not at all. Well, I thought that's what you just said. No, no, no, no, no, no. What I'm saying is that's what they're saying, and even if they're right in that, even if they're right that they got there through good faith, why did they make the copies? They knew they had the wrong guy. They knew the warrant had misinformation, and they knew a judge dismissed the case and said give him his property back. Because I think that they thought there was evidence potentially of other illegal activity on the hard drive, and they thought they ought to keep it so they could do further investigation with respect to different matters. Now, whether they could or couldn't do that in the Section 1993 context, what matters is whether or not the law was clearly established. Right. So my time is up, but for purposes of, can I just answer your question and then sit down? Okay. You just brought up two things. You brought up clearly established, which, again, I think that Prey v. City of Sandusky, Allen v. Lee's I'm sorry to interrupt you, but what are you relying on in Prey? Because I'm looking at it, and I don't... Conversely, any search or seizure that took place after... Can you tell me what page? I'm sorry. If not, you can tell me in rebuttal. It's 1159. Okay, thanks. Beginning with conversely. Okay. Where once they know they're in the wrong residence, you've got to give up. Now, to answer your first question, let's say you get a warrant to go into somebody's house because you think there's drugs there. You break through the door, traumatize the family, and then realize, oh, whoops, there's no drugs here. We got misinformation. But you think you see some child pornography there. You can take it if you really feel it's appropriate, but you're going to have to get a new warrant to search hard drives based on what you think you just found. You can't rely on an old warrant that you know was based on a mistake, that you know you only obtained through misinformation on an affidavit, based on a case that a judge dismissed and ordered the return of that property. You can't go then and copy those hard drives and desperately try to come up with, oh, it must be child pornography. And the biggest proof that that's nonsense is they haven't charged him with that. They haven't even tried. All right, you'll have your rebuttal time. Thank you. Good morning, Your Honors. Rick Patterson here on behalf of the defendants. I don't really know where exactly to start, given Mr. Ratner's argument. He's kind of all over the place, but as far as... Why not give him his property back? Well... I mean, that seems to be the remedy he wants, and that seems to be a pretty good way of resolving this whole matter and relieving your officers from possible damages, exposure, and so on and so forth. I mean, if what he really wants is the property back, I mean, why shouldn't we say, go talk to our settlement attorneys and see if you can't work that out? That would be fine, and I don't think there'd be a problem at this point giving him his property, you know, giving the copies back if that's what he asked for, but that's not what he's asking for. He's asking for money damages against the wrong people. Today he told us that's what he wanted. Right. It seems to me there's an avenue for you all to talk here, potentially. The problem with the claim that's before the court is that it's against the wrong people. If his true issue is that the items shouldn't have been copied, that decision was made by a prosecutor who's not involved in this case. But McCabe copied them, right? McCabe took the direction from Paul Walton, who's the chief assistant prosecutor for Oakland County, a separate division, both an elected prosecutor and an elected sheriff. Wait, let's just assume it's illegal. If a prosecutor tells an officer to do something illegal, they have to do it? They don't have to do it. If they know it's illegal, they don't do it, but there's no law that has been cited by anybody here that a prosecutor who's in charge of a criminal investigation at that point in time What's wrong with his analogy to Prey? Which is, Prey says, once you know, and he quoted the right sentence, conversely, any search or seizure that took place after the officers knew or reasonably should have known that they were in the wrong residence would no longer be protected by qualified immunity. So, at this point, you know he's not the guy, you know everything was botched. I mean, you put this guy through hell, and now you're at this point. I mean, why isn't that directly on point? Well, the first thing is that the distinction is as far as knowing you have the wrong guy. They weren't convinced, they didn't know for certain that they had the wrong guy because that's why they dismissed it without prejudice for further investigation. That's what the prosecutor said at the preliminary hearing. Explain to me, if you went to a judge, what would your probable cause be? Because this seems, I agree with Judge Gibbons, L just seems more problematic, but let's leave that aside for a second. What would your probable cause be to keep it if you're dismissing it without prejudice and conceding, right? There was some evidence that he didn't communicate with this young child in that window where the communications allegedly occurred, and then the screen name or username, I'm not very technologically savvy, but the anonymous FL. So what would be your probable cause to go ahead and map someone's phone, especially after Riley? Well, the point, when they obtained the information, it was valid in the first place because it was a valid warrant. There was a mistake as far as the user ID. But now we know it's not valid, right? But they still have that information. You don't flush the information just because they've legally obtained that information, the information on his devices about girls, what appeared to be underage girls, girls in the same poses that this victim was... But they didn't have a warrant to obtain that information. They did. From his devices. They had a warrant for his devices. But it was an invalid warrant. You're talking about the first warrant? Yeah. Or did they get a subsequent warrant? No, no, first warrant. Well, the first warrant, it turned out that the basis on which they obtained the first warrant didn't exist on any of his devices. I mean, they were searching for information about his contacts with this 14-year-old Amber Fields, a particular woman, a particular girl. You don't make any claim that they found that on his devices, do you?  Well... But they found information that would corroborate that claim as part of their investigation. Well, they found that he might have had, that he arguably had some images of underage folks that being disputed and, you know, whether it was... And girls in similar poses and conversations with other girls asking them for photos and the girls asking him to leave them alone. You know, those things were all discovered pursuant... But after the warrant, so why not get a new warrant? And they weren't discovered as to the particular individual they were concerned about in the first place. He had nothing to do with Amber Fields. I understand, but as a police officer, if you're investigating something, you're investigating the allegations that Amber Fields made and you find these devices that have young girls, similar poses, his conversations with them, all of that would corroborate the charge against this individual. So that information was... But is your adversary wrong when he says, if you go to find drugs and you don't find drugs, but you see child pornography instead, let's assume it's not on a computer, they're just images sitting out there in plain view, that you don't have to obtain a new warrant? Is he wrong about that? I don't think he's wrong about that. I haven't researched the issue. Why is this situation not perfectly analogous to that one? I'm not seeing the connection because in my head, in this case... You don't find that one thing. You see something else that you think might be the subject of another criminal investigation. But you just seize the evidence without having a warrant to do... That might be the other evidence without having a warrant to do so. The distinction, I think, is that if you have a warrant for drugs and you go in there and you see drug paraphernalia... Well, that's direct evidence of what was being sought in the first ward. Much like pictures of what appear to be underage girls and him having conversations and requesting new photos from girls. That's why I don't see the analogy of if you look for drugs and you find child pornography, why isn't that the same? Well, they were looking for child pornography and they found what they thought was child pornography. But you've never subsequently charged this plaintiff with anything. The prosecutor's office did not. You don't have any use for them. We're somewhat off track here because we're talking... Who are the defendants in this case? And that's the issue where... These may all be valid points, and I'm not suggesting... But no defendant in this case is responsible for these things. There is Elgis, who had no involvement whatsoever with the mirroring of the devices. There's McCabe, who's the undersheriff, who took the direction from Paul Walton, who was the chief assistant prosecutor. So he didn't make the decision to do it. And then you have a municipal claim, but they... Attorney, I'm still not following. Why can't you sue the officer that did it if you think it's unlawful? In other words, assume for a hypothetical it's unlawful. You surely can sue an officer that did an unlawful act. But in this case, there'd be qualified immunity, as plaintiff's counsel acknowledged, on the record at the district court. Qualified immunity based on somebody for whom I don't work told me to do it. That's not a part of the qualified immunity analysis that I'm aware of. No, no, no, that's a different issue. What I was responding... It's exactly what you said. You said McCabe can't be held responsible because the prosecutor told him to do it. Well, he didn't work for the prosecutor, and he has his own obligations to make sure that the conduct in which he's engaging is legal. But there is no case that's been identified... Well, now you're getting back to what may be your stronger point. But I think more of that point and I guess at the end of the day, with McCabe, to me it comes down to the qualified immunity analysis. Because even if... Just putting the other issues aside, plaintiff's counsel acknowledged at the district court in an argument that he has no case that would support the claim that this is clearly established. And without that, McCabe is entitled to qualified immunity. And plaintiff agreed with that at the district court level. They have to come up with a case that clearly establishes this right. And he has not done that. Why is PRAE not clearly establishing it? Because, again, you're dealing with copying information that you lawfully obtained. And the... What you're saying is this... I'm sorry to interrupt you, but what you're saying is this is too general. PRAE is too general. And the more specific situation is different here, which is lawfully obtained or at least arguably lawfully obtained information in your possession, you can copy. At what point do you have to give it back? When it's determined that it doesn't support criminal activity. I mean, I don't... I haven't... I'm not a prosecutor. I'm not a police officer. I can't tell you at what point they make that determination and at that point in time then it would be returned. In this case, because this has been ongoing, litigation's been ongoing, and if that's the only thing the plaintiff's counsel is looking for is the return of the copy of these devices, you know, that hasn't been a discussion until this morning, and I don't think that would be a problem. Whose possession is this... are these copies? Are they in possession of a police department, the sheriff's department, or the prosecutors, or somebody else? I cannot say with 100% certainty, but I believe they're with the prosecutor's office. They're not a party here. They're not a party here. So if you want the return of this, these people who are parties can't do it. They don't have the authority to do that, but I am confident that I can call the people at the prosecutor's office and explain to them what the Sixth Circuit has indicated and that they should, you know, return the copies of these things and they probably would do that. Has plaintiff's counsel talked to you informally about this? No, not even asked for it. You know, sometimes, sometimes counsel don't jump to the most practical solution as quickly as perhaps they should, but if that's really what this case is about, I really think probably it could be resolved. Sounds like it could be. I don't disagree with you, but there's always been a monetary component to the plaintiff's claim as far as I've known, and, you know, the defendants are not going to pay him money under the circumstances of this case. Well, what he told us... I understand. I'm just... ...is that he didn't say he didn't care about it, but certainly that was not the focus of his argument. Right. And so if that's changed, then we can have a conversation afterwards, but as far as the claims that exist in this case, the defendants that are here, I don't see anything, I don't see evidence that the misidentification of the username as far as Elgis goes was anything more than a mistake. It's clear under the case law that mistake or negligence isn't sufficient. The plaintiff hasn't identified anything to go beyond that, so claims against Elgis are gone. The mirroring issues don't even involve Elgis. McCabe has a limited role here, and, you know, plaintiffs in their attempt to create a municipal liability under Monell have suggested that McCabe is a decision-maker, a policymaker with the final authority, but he is the undersheriff. He reports to Sheriff Bouchard. There's nothing that allows his decisions to be final on behalf of the Sheriff's Department, let alone Oakland County. So the attempt to try to bootstrap McCabe into a position above and having more responsibility than he does versus a municipal liability, I think should be rejected, or I think should be affirmed, and there is no other... Just to be entirely candid about it, we don't seem to be analytically where I thought we might be this morning, but I think it is a close question as to whether Elgis was merely negligent, whether he merely made a mistake, or whether some of his behavior could be categorized as something more culpable in this context. Okay, I don't... If there's a question... No, I mean, there's negligence, then you get to the question of whether it could be said that the various mistakes he made amounted to recklessness, in which case you've got another issue. Well, I think that the... You know, in order for them to attack Elgis's behavior, you know, the standard... You know, a plaintiff must make... This is under the Newell v. Wayne County case. I didn't mean to start you off on another, because a plaintiff hasn't pressed that point this morning. All right, well, I guess for the sake of my own sanity and my drive home today that I don't kick myself for not saying it, I'd like to just... Go ahead. Thank you. You know, a plaintiff must make a substantial preliminary showing that the reckless disregard for the truth included a false statement in a warrant affidavit. What does substantial showing mean? In this case, there hasn't been any showing that there was a knowing and intentionally or reckless disregard for the truth. There's nothing to indicate that he ever had the information about the username AnonymousFL. When he viewed the spreadsheet, that AnonymousFL did not appear on the spreadsheet. The size of the cell on a spreadsheet that was pulled up would have to have been expanded in order to see the full username. And I don't see that the failure to expand a cell on a spreadsheet as something more than a mistake or at most negligent, it certainly isn't intentional on his part to support, you know, any type of liability. If it was reckless, would that support liability? I mean, I didn't look at it. It would have to be a knowing and reckless disregard, and I don't think there's nothing to indicate here that it was knowing. You know, again, it's been characterized as a mistake, and plaintiffs, by plaintiffs on counsel, and that's all, in my opinion, it really exists. I see my time is up. I thank you for allowing me to speak. Thank you. I just want to be very clear about something. We're not giving up our claims against Algis. That was very clear in our briefing. We believe that there's enough on the record to survive the mere negligence standard. You said it's a close call, Judge Gibbons. But it's not mere negligence. That's, I never said it was mere negligence. Oh, I thought you said... No, no, no. I'm sorry. No, no, no. There's enough to survive the reckless standard? Reckless disregard, yes. Because it was right smack in front of him, and we know he opened cells because he saw 88 Batman 88. So is that the totality of your evidence? Because what does substantial evidence mean? That's a good question. I don't know the answer to that. Well, you ought to have a position about it, I would think. Our position on that is that when you have a spreadsheet in front of you and you're going after somebody for a very, very serious crime, you have to take into account what you're trying to do, what the goal is here, how serious the crime is, how serious your actions are about to be. I get all that. I get the officers made a mistake. The question that I would struggle with is why isn't that the equivalence of negligence? And why doesn't substantial evidence mean you have to, as we said in Butler and other cases, some evidence of the culpability, in other words, of the mental state itself? Someone told him something else, something that gets you over the hump, some piece of evidence you can point to that changes it from negligence to reckless. The fact that he lied during his deposition about what he saw in the cells, and I actually attached what you see when you first open the spreadsheet. You don't see anonymous, you see anonymo. So he had to open it at least a little bit. We know he's lying about something. You can't lie unless there's a reason to lie. He just opened it partway, and you're saying if he'd opened it the whole way, he'd have seen it wasn't anonymous. No, if you open the spreadsheet without clicking on each individual cell, then you only see a part of what's written in that cell. So when he just opens up the spreadsheet, you see anonymo, and you see 88 Batman. You don't see 88 Batman 88. You don't see anonymous or anonymous FL. If you saw anonymo, wouldn't you assume it's anonymous? I don't know the answer to that. If you're going to go get a warrant for somebody, shouldn't you open it up and actually care that you're about to go break somebody's door down? Did you see the screen name and username on the thing? They were both cut off at anonymo. Oh, both the screen names? Yeah, anonymo. That's all you could see in the cell. When you open it, it says anonymous or anonymous FL. He never bothered opening it. The question is, if you're going to travel to New York, break somebody's door open, seize all their stuff, for the rest of his life, for the rest of multiple lives, shouldn't you open it up to make sure you're actually getting the right guy? Is that mere negligence, or is that reckless disregard, considering what you're doing? So the problem is, everything he did there, what you're saying is what he should have done and could have done and would have done. Right. But you're not going to the mental state. The key is what the mental state is. In other words, what you're saying is the serious nature of it. That doesn't change the mental state. Well, I think it does. Because if it's something small, then you're not going to be as worried about it as if it's something which is going to require a lot of time, money, and energy to travel across state lines and go bring somebody back from New York. It's something that you should take into consideration. So my point is, I'm not going to forego that. I want to get back to one other thing, and that is, let's just get to the bottom line of some things. The first warrant was invalid. Any evidence they got from that warrant is going to be suppressed. No question about that. The first warrant was an invalid, period. Whether they're entitled to qualified immunity on that invalid warrant has nothing to do with the fact that whatever evidence they got from that warrant, such as these supposed underage pictures for which he was never charged or even investigated, would have been suppressed. You want to keep those things? You've got to get another warrant. We've got case law. There's a lot of case law. Prey, I think, is particularly on point that says you're not allowed to keep it once you know you've got the wrong guy. And in this case, it's even worse. Judge Tarnow told them to return the property. The district court judge in the state of Michigan told them to return the property, and they're not doing it. The only way... Did you ask them informally to say, go ahead and let me know that you've done it? But you haven't asked the prosecutor then? You haven't asked Mr. Patterson, as far as we can tell? That's what a big part of this lawsuit's all about. And they've already been ordered to do that twice. Judge Tarnow, before he denied my motion, told them, return the property. I'm not sure... I thought he was about to grant my motion when he said that.  Return the property, which is exactly what my motion was for, but your motion's denied. You've got to have good faith. I don't know if there's a better example of bad faith. A judge says, return the property, you've got the wrong guy. We know we've got the wrong guy. We know the case was dismissed, but we want to nail them on something because our egos are in the way. So we're going to... If they defied an order of Judge Tarnow, why wouldn't you go back and ask Judge Tarnow for some relief for their failure to adhere to his order? Because he entered a final judgment denying my motion. It was a very strange argument. If he orders them to return property, you can always see contempt sanctions if they don't. If it's considered an order. If he says do it, he told them to on the record, but then he denied the motion. You had a motion to return the property? That was my motion for summary judgment in my favor. We filed our own motion for summary judgment. The problem is, at least in my mind, if all you're asking for is the property back, it seems to me that's a simple solution. Well, that's not all we're asking for, but that's what I think is the biggest question before this court today. The implications of this case are going to be massive. It's going to be, do the police get to keep your hard drives or not? I'm sorry. Go ahead. The qualified immunity is different than whether they get to keep your hard drive. And so the question is, if you can get the copy back, then we can take that and then we can solve the qualified immunity problem. They've already been ordered to return it twice and they haven't done it. They don't care. The only way they're going to care is if it's a written order. Well, as Judge Givens and I just said, if they were ordered, you're using the word ordered, that has connotations. And if they disobey an order, you can seek contempt sanctions. I guess I can try that, but when Judge Tarnow closed out the case he denied that motion and then said return the property. I didn't really understand. The motion suggested it would be very easy if that's what the case is about. Then why didn't they do it yet? They were ordered to return it twice. Why haven't they done it? Opposing counsel, that's what I used to do, is practicing. Well, Your Honor, at this point I think it's important to have the case law. At this point, all the judges in this case and the lawyers, all the judges are saying, look, give the property back, but maybe they're saying, but we can't grant you relief under qualified immunity, but they should give your property back. And maybe some judges are actually ordering it. And no one's following up on that. I think if you go back to Tarnow and say, look, you told them to give us the property back. The state court judge told them to give us the property back. Opposing counsel, and get your client most the thing he seems to want most. The problem at this point is the implications for the entire Sixth Circuit. Well, if the law is not clearly established, all we're going to say is that he's entitled to qualified immunity. We may or may not say what the law is. And that's different than what they did is right. The court seems to do that a lot. But I don't think that's appropriate in this case. We need law. We generally are not seeking, we're generally just seeking to resolve the issues that we've got. I understand. Just what happened here was so palpably wrong. We need law on this. Look, your time is way past. We prolonged our conversation. Thank you. We appreciate the argument both of you have given, and we'll consider the case carefully. And we will also confer about whether we should seek our court's circuit mediator's office in this matter. But I would suggest that perhaps you all could work it out on your own as well. Thank you, Your Honors. Thank you, Your Honors.